UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM MAXIE, JR.,

        Petitioner,

                                    CASE NO. 2:16-cv-10351
v.                                        HON. VICTORIA A. ROBERTS

SHERRY L. BURT,

        Respondent.

_____/

**OPINION AND ORDER
DENYING THE PETITION FOR WRIT OF HABEAS CORPUS,
DENYING A CERTIFICATE OF APPEALABILITY, AND
GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS***

Petitioner William Maxie, Jr., filed a *pro se* petition for the writ of habeas corpus that challenges his state convictions for first-degree home invasion, Mich. Comp. Laws § 750.110a(2), and possession of burglar tools, Mich. Comp. Laws § 750.116.  Petitioner alleges as grounds for relief that (1) there was insufficient credible evidence at trial to prove his guilt, (2) his trial attorney was ineffective, (3) the prosecutor deprived him of a fair trial and due process, and (4) his appellate attorney was ineffective.  The State urges the Court to deny the petition because Petitioner's third claim is procedurally defaulted and because the state court reasonably adjudicated his other claims.  The Court agrees and will deny the petition for those reasons.

# I. Background

The charges against Petitioner arose from a breaking and entering at Sullivan
Fence Company in Saginaw County, Michigan on November 3, 2011, at approximately
3:00 a.m. Petitioner went to trial before a jury in Saginaw County Circuit Court. As
explained by the state appellate court on direct review, an employee of the fence
company, Darren Grandmaison, testified that he

> was in the building at the time of the break-in. He resided there during the
> week because he lived out of town. Grandmaison testified that he was
> almost asleep when the cable television picture went out, and shortly
> thereafter the power went out. Grandmaison testified that he heard
> someone entering the business office through a window that was secured
> with an aluminum bar. He slept in the shop area of the building, which was
> adjacent to the office. Police officers responding to the scene encountered
> defendant in front of the building. When stopped by police, they recovered
> a hammer, two screwdrivers, four wrenches, a folding knife, a calculator,
> and a [notary stamp] from defendant's pants pockets. Upon searching the
> area, the police discovered that one of the business's utility boxes had been
> pried open and the wires appeared to be loose. A part of an electric meter
> was on the ground.

*People v. Maxie*, No. 314607, 2014 WL 3612702, at *1 (Mich. Ct. App. July 22, 2014)
(unpublished) (alteration added). Grandmaison was unable to identify the person that he
saw in the shop, and, at trial, he denied purchasing cocaine from Petitioner or inviting
Petitioner into the shop to smoke cocaine with him.

Petitioner testified in his own defense that he was a little "tipsy" from drinking
with a friend on the night in question and that Grandmaison approached him after he left
his friend's home at approximately 2:00 a.m. Grandmaison asked him where he could
buy a bag of crack cocaine. Petitioner then acquired some cocaine from a location about
two blocks away and brought it back to Grandmaison, who admitted him to the fence

company's building.  The two of them smoked the cocaine in a truck that was parked in the garage.  They got into an argument when Grandmaison complained about the amount of the cocaine that he received for his money.  Petitioner subsequently went in the bathroom because he was not feeling well.  He grabbed two screwdrivers from off the toilet tank and put those items, along with a hammer and a black case which he saw on his way out of the bathroom, in his pockets.  He then heard Grandmaison talking to the police.  Because he was unable to exit the building through the door, he ran back to the office, threw a metal thing out of the way, and opened the window.  The police arrested him after he stepped outside.  At the time, he possessed some additional tools, which he had used to work on his friend's car that night.

Sergeant Matthew Ward testified on rebuttal that he detected no signs of intoxication on Petitioner and that he did not smell any burnt crack cocaine inside the garage or the shop area of the fence company.  Defense counsel argued to the jury that, at most, Petitioner committed a larceny by taking screwdrivers and a hammer from the building.  Defense counsel maintained that, because Petitioner was not charged with larceny from a building, and because there were no signs of a forcible entry, the jury should find him not guilty of the charges.

On November 8, 2012, the jury found Petitioner guilty, as charged, of first-degree home invasion and possession of burglar tools.  On December 18, 2012, the trial court sentenced Petitioner to a concurrent terms of twelve and a half to thirty years in prison for the home invasion and ten to twenty years in prison for possessing burglar tools.

Petitioner moved for a new trial, for an evidentiary hearing, and for funds to hire an investigator on the basis that he was denied effective assistance of trial counsel. The trial court held oral arguments and later denied the motion. The trial court stated in its written decision that Petitioner's claims of ineffectiveness did not meet the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The court also concluded that an evidentiary hearing was unwarranted and that there was no need for funding to investigate further. *See People v. Maxie*, No. 11-036678-FH-3 (Saginaw Cty. Cir. Ct. Nov. 22, 2013).

In an appeal of right, Petitioner argued through counsel that: (1) there was insufficient credible evidence to prove him guilty of the charged crimes; (2) the trial court deprived him of a fair trial and due process of law through improper evidentiary rulings and by refusing to grant his motion for a new trial; and (3) the prosecutor's actions deprived him of fair trial and due process. Petitioner raised similar claims in a *pro se* supplemental brief. The Michigan Court of Appeals rejected Petitioner's arguments and affirmed Petitioner's convictions in a thorough *per curiam* opinion. *See Maxie*, 2014 WL 3612702.

In an application for leave to appeal in the Michigan Supreme Court, Petitioner raised the same issues that he presented to the Michigan Court of Appeals and two new issues regarding the trial court's jury instructions and defense counsel's failure to request a jury instruction on a lesser-included offense. On February 3, 2015, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the questions presented to it. *See People v. Maxie*, 497 Mich. 955; 858 N.W.2d 439 (2015).

On May 27, 2015, Petitioner filed a motion for relief from judgment in which he alleged that his trial and appellate attorneys were ineffective. The trial court denied his motion on the basis that Petitioner's claim about trial counsel was raised on appeal and could not be reasserted in his post-appeal motion and that his claim about appellate counsel was frivolous. *See People v. Maxie*, No. 11-36678-FH-3 (Saginaw County Cir. Ct. Oct 29, 2014). On appeal from the trial court's decision, Petitioner raised only his claim about appellate counsel.

While Petitioner's appeal was pending in the Michigan Court of Appeals, he filed his habeas corpus petition and a brief that raised issues regarding the sufficiency of the evidence, trial counsel's representation of him, and the prosecutor's conduct. Shortly afterward, the Michigan Court of Appeals denied leave to appeal because Petitioner had failed to establish that the trial court erred in denying his motion for relief from judgment. *See People v. Maxie*, No. 330298 (Mich. Ct. App. Feb. 26, 2016). On December 28, 2016, the Michigan Supreme Court denied leave to appeal because Petitioner failed to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Maxie*, 500 Mich. 921; 888 N.W.2d 66 (2016).

Meanwhile, the State filed an answer to Petitioner's habeas petition. Petitioner subsequently filed an amended brief, which raised the same issues as the ones presented in his initial brief. He later filed a supplement to his amended brief, which alleged ineffective assistance of appellate counsel. The State maintains that Petitioner's prosecutorial-misconduct claim is procedurally defaulted and that the state-court rulings on Petitioner's other claims are objectively reasonable.

## II. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires habeas petitioners who challenge "a matter 'adjudicated on the merits in State court' to show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.' " *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (quoting 28 U.S.C. § 2254(d)). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103. A state-

court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. §

2254(e)(1), and habeas review is "limited to the record that was before the state court."

*Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III. Analysis

### A. Sufficiency of the Evidence

Petitioner alleges that there was insufficient credible evidence at trial to prove that

he was guilty of the crimes for which he was charged and convicted. The Michigan

Court of Appeals adjudicated this claim on direct review and concluded that there was

sufficient evidence to support Petitioner's convictions for both first-degree home invasion

and possession of burglary tools.

### 1. Clearly Established Federal Law

The Due Process Clause of the United States Constitution "protects the accused

against conviction except upon proof beyond a reasonable doubt of every fact necessary

to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364

(1970). Following *Winship*, the critical inquiry on review of a challenge to the

sufficiency of the evidence supporting a criminal conviction is

> whether the record evidence could reasonably support a finding of
> guilt beyond a reasonable doubt. But this inquiry does not require a
> court to "ask itself whether *it* believes that the evidence at the trial
> established guilt beyond a reasonable doubt." Instead, the relevant
> question is whether, after viewing the evidence in the light most
> favorable to the prosecution, *any* rational trier of fact could have
> found the essential elements of the crime beyond a reasonable doubt.
> This familiar standard gives full play to the responsibility of the trier
> of fact fairly to resolve conflicts in the testimony, to weigh the
> evidence, and to draw reasonable inferences from basic facts to
> ultimate facts.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citations and footnote omitted) (emphases in original). "Circumstantial evidence may support a conviction, *McKenzie v. Smith,* 326 F.3d 721, 727 (6th Cir. 2003), and such evidence need not remove every reasonable hypothesis except that of guilt. *Walker v. Russell,* 57 F.3d 472, 475 (6th Cir. 1995)." *Apanovitch v. Houk*, 466 F.3d 460, 488 (6th Cir. 2006).

Under AEDPA, the Court's "review of a state-court conviction for sufficiency of the evidence is very limited." *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018). The Supreme Court has "made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (*per curiam*).

First, it is the responsibility of the jury to decide what conclusions should be drawn from the evidence admitted at trial. *Id*. (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (*per curiam*)). "And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id*. (quoting *Cavazos*, 565 U.S. at 2); *see also Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017) (stating that "two layers of deference apply [to a sufficiency-of-the-evidence claim], one to the jury verdict, and one to the state appellate court"), *cert. denied*, 138 S. Ct. 1283 (2018).

> "[T]his standard is difficult to meet," no doubt, but "that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102, 131 S. Ct. 770, 178 L.Ed.2d 624 (2011). "[H]abeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for

ordinary error correction through appeal." *Id.* at 102-03, 131 S. Ct. 770
(internal quotation marks and citation omitted).

*Thomas*, 898 F.3d at 698.

## 2. First-Degree Home Invasion

The *Jackson* "standard must be applied with explicit reference to the substantive

elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16.

The elements of first-degree home invasion are set forth in the statute, which states that --

> [a] person who breaks and enters a dwelling with intent to commit a felony,
> larceny, or assault in the dwelling, a person who enters a dwelling without
> permission with intent to commit a felony, larceny, or assault in the
> dwelling, or a person who breaks and enters a dwelling or enters a dwelling
> without permission and, at any time while he or she is entering, present in,
> or exiting the dwelling, commits a felony, larceny, or assault is guilty of
> home invasion in the first degree if at any time while the person is entering,
> present in, or exiting the dwelling either of the following circumstances
> exists:
>
> (a) The person is armed with a dangerous weapon.
> (b) Another person is lawfully present in the dwelling.

Mich. Comp. Laws § 750.110a(2).

> The evidence at Petitioner's trial established that
>
> Grandmaison was almost asleep in the shop when his television went out
> and, shortly later, the power went out. The evidence revealed that someone
> had tampered with the building's utility boxes. While lying in the bed,
> Grandmaison heard the aluminum bar that was in the office window hit the
> ground. Grandmaison heard items on desks moved around and desk
> drawers opening and closing. He saw someone inside the building.
> Grandmaison noticed that the safe was pulled out of its location in the
> corner of the office and turned. Grandmaison stated that items on the
> secretary and salesperson desks were moved and papers from a drawer were
> placed on a desk. Police approaching the building encountered defendant
> walking away from it. Defendant had a hammer, two screwdrivers, four
> wrenches, a folding knife, calculator, and a notary stamp in his pants

pockets.  The office manager identified the [n]otary stamp as hers and
explained the papers she found on her seat were taken out of her desk
drawers.  The office manager said that the safe, a deck sample, and
blueprints were moved from their usual locations.

*Maxie*, 2014 WL 3612702, at *3 (alteration added).

Petitioner, moreover, testified that he removed tools from the building.  A rational

trier of fact could have concluded from the evidence taken in the light most favorable to

the prosecution that Petitioner broke and entered a dwelling without permission and while

another person was present and that he committed a larceny.  Thus, the prosecutor

satisfied the elements of first-degree home invasion.

Petitioner, nevertheless, points out that there was no forensic evidence and that he

made no inculpatory statements.  He also alleges that Grandmaison's testimony about

how he entered the building could not be true because there was no evidence of a forced

entry and because it was impossible to force the window open from the outside.

Grandmaison, however, testified that he heard the bar which was securing the window

fall to the floor, and the prosecutor was not required to disprove every plausible defense

theory, *Apanovitch*, 466 F.3d at 488.  Furthermore,

[a] reviewing court does not reweigh the evidence or redetermine the
credibility of the witnesses whose demeanor has been observed by the trial
court.  *Marshall v. Lonberger,* 459 U.S. 422, 434, 103 S.Ct. 843, 74
L.Ed.2d 646 (1983).  It is the province of the factfinder to weigh the
probative value of the evidence and resolve any conflicts in testimony. *Neal
v. Morris,* 972 F.2d 675, 679 (6th Cir. 1992).  An assessment of the
credibility of witnesses is generally beyond the scope of federal habeas
review of sufficiency of evidence claims.  *Gall v. Parker,* 231 F.3d 265,
286 (6th Cir. 2000).

*Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).  There was sufficient evidence at Petitioner's trial to sustain his conviction for first-degree home invasion, and "[t]he mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Id.* at 788-89.

Petitioner, however, maintains that the building in question was not a "dwelling," as defined in the statute, and that Grandmaison was not "lawfully present" in the building, as required for a conviction on the charged offense.  The home-invasion statute, however, defines a dwelling as "a structure or shelter that is used permanently *or temporarily* as a place of abode, including an appurtenant structure attached to that structure or shelter."  Mich. Comp. Laws § 750.110a(1)(a) (emphasis added).

Grandmaison testified that he stayed at the shop during the week because he lived out of town.  This testimony is an indication that the building was used temporarily as a dwelling and that Grandmaison had permission to use the building as his abode during the work week.  In fact, the Michigan Court of Appeals determined that the shop where Grandmaison stayed served as his abode during the work week.  The state court's interpretation of the home-invasion statute binds this Court on habeas corpus review. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

The Michigan Court of Appeals concluded on review of Petitioner's claim that "the direct and circumstantial evidence and reasonable inferences that may be drawn from the evidence were sufficient to support defendant's conviction for first-degree home invasion."  *Maxie*, 2014 WL 3612702, at *3.  For all the reasons given above, this conclusion was not contrary to, or an unreasonable application of, *Jackson*.  Petitioner,

therefore, has no right to relief on the basis of his challenge to the sufficiency of the

evidence on the home-invasion charge.

### 3. Possession of Burglar Tools

Petitioner alleges that there was insufficient evidence of possession of burglar

tools.  To convict a defendant of this crime,

> the prosecution must prove beyond a reasonable doubt that (1) the
> defendant knowingly possessed (2) a tool or implement adapted or designed
> for forcing or breaking open any building, room, vault, safe or other
> depository (3) in order to steal money or other property (4) with the intent
> to use or employ the tool to force entry to steal money or other property.
> MCL 750.116.

*People v. Kendrix*, No. 317371, 2014 WL 6602692, at *2 (Mich. Ct. App. Nov. 20, 2014)

(unpublished).

Petitioner admitted at trial that he possessed tools before he entered the building

and that he stole property from the building.  The elements in question here are whether

he possessed a tool "adapted or designed for forcing or breaking open any building" with

the intent to force entry and steal property.

The testimony at trial established that Petitioner

> had possession of a hammer, two screwdrivers, four wrenches, and a
> folding knife when he was searched by the police.  Further, one of the
> officer[]s testified that based on his experience and training, he would
> classify the items as burglary tools because people breaking into buildings
> use similar instruments to break or pry open windows or doors.  He added
> that although the tools had other uses, the fact that they were on the
> defendant on scene also led him to conclude they may be burglary tools.

*Maxie*, 2014 WL 3612702, at *11.

Although Petitioner testified that he took a hammer and screwdrivers from the building, no one reported that tools were missing from the building. (11/7/12 Trial Tr. at 89.) The Michigan Court of Appeals, therefore, reasonably inferred that Petitioner possessed tools before entering the building. The Court of Appeals also reasonably concluded that, "because the window could only be opened by prying it open or breaking it, and the evidence established that defendant had [] been inside the building without permission, there was sufficient credible evidence to support a finding that [he] planned to use or actually used the tools found on him to break into the building." *Maxie*, 2014 WL 3612702, at *11.

A rational trier of fact could have concluded from the evidence taken in the light most favorable to the prosecution that Petitioner possessed tools "adapted or designed for forcing or breaking open any building" with the intent to break into the building and steal property. Thus, the evidence was sufficient to support Petitioner's conviction for possession of burglar tools, and the state appellate court's adjudication of this issue was not contrary to, or an unreasonable application of, *Jackson*. Petitioner has no right to relief on the basis of his challenge to the sufficiency of the evidence on the charge of possession of burglar tools.

**B. Trial Counsel**

Petitioner's second claim alleges that the trial court deprived him of a fair trial and due process of law through improper evidentiary rulings and by refusing to grant his motion for a new trial. The basis for this claim is Petitioner's allegation that his trial attorney was ineffective. Petitioner asserts that his attorney failed to adequately consult

13

with him before trial, failed to consult key witnesses, and conducted an inadequate investigation. The Michigan Court of Appeals rejected each of Petitioner's claims on direct review.

## 1. Clearly Established Federal Law

To succeed on his claims here, Petitioner must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. The deficient-performance prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. Petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688.

The "prejudice" prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. A defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

"The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

## 2. Failure to Consult

Petitioner alleges that his trial attorney failed to discuss trial strategy with him before trial. According to Petitioner, he had a one-minute telephone call with his attorney and two five-minute face-to-face visits at the jail eight days before trial, and none of the conversations included a discussion of the facts and circumstances of the case.

Defense attorneys have "a duty to discuss potential strategies with the defendant," and to "consult with the client regarding 'important decisions,' including questions of overarching defense strategy." *Florida v. Nixon*, 543 U.S. 175, 178, 187 (2004); *see also Jemison v. Foltz*, 672 F. Supp. 1002, 1007 (E.D. Mich. 1987) ("Defense counsel had a duty to consult with defendant on important decisions, and to bring to bear on the case such skill and knowledge as to make the trial a reliable adversary proceeding."). "That obligation, however, does not require counsel to obtain the defendant's consent to 'every tactical decision.'" *Nixon,* 543 U.S. at 187 (quoting *Taylor v. Illinois,* 484 U.S. 400, 417-418 (1988)). Thus, "counsel may exercise his professional judgment with respect to the viability of certain defenses and evidentiary matters without running afoul of the Sixth Amendment." *Lewis v. Alexander*, 11 F.3d 1349, 1353–54 (6th Cir. 1993).

Likewise, "[n]ot every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel." *Morris v. Slappy,* 461 U.S. 1, 11 (1983). "[A] court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular

act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 702 (2002) (citing *Strickland*, 466 U.S. at 689).

The facts in this case were not complicated, and Petitioner admits that he had a meaningful discussion about the defense strategy with his attorney during trial. *See* Petitioner's Amended Memorandum of Law, p. 40, 56, ECF No. 10, Page ID 208, 224. Furthermore, defense counsel likely had access to Petitioner's criminal record, the transcript of Petitioner's preliminary examination, and the results of the competency and criminal-responsibility examination.

Defense counsel, no doubt, also had access to police officer Ryan Patterson's police report which indicates that Petitioner told Officer Patterson the same story that Petitioner presented at trial. In other words, the comments that Petitioner made to Officer Patterson on the way to jail became Petitioner's defense to the charges at trial.

To summarize, defense counsel had access to the critical facts in the case, he appeared to be prepared for trial, and he also had a meaningful consultation with Petitioner during trial. As a result, defense counsel's performance was not deficient, and Petitioner was not prejudiced by counsel's alleged failure to spend more time consulting with him before trial.

### 3. Failure to Contact Witnesses

Petitioner alleges next that defense counsel failed to consult and call key witnesses who would have revealed weaknesses in the prosecution's case. The Michigan Court of Appeals rejected this claim by stating that "not calling defendant's suggested possible

witnesses was sound trial strategy," which it would "not second-guess with the benefit of hindsight." *Maxie*, 2014 WL 3612702, at *6.

Defense attorneys have "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). Under *Strickland*, however, the Court "must presume that decisions of what evidence to present and whether to call or question witnesses are matters of trial strategy." *Cathron v. Jones*, 77 F. App'x 835, 841 (6th Cir. 2003) (citing *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002)).

One potential defense witness was Officer Ryan Patterson whom defense counsel waived as a witness during trial. Petitioner contends that Officer Patterson would have testified that Petitioner was drunk or high on drugs when he was arrested. Petitioner asserts that this testimony would have supported his trial testimony that he used drugs with Grandmaison. Defense counsel, however, informed the trial court that he did not think Patterson's testimony would benefit Petitioner and that Petitioner's comments to the officer likely were hearsay. (11/7/12 Trial Tr. at 4-6.) The trial court opined that this was a strategic decision, *id*. at 6, and the Michigan Court of Appeals concurred. *Maxie*, 2014 WL 3612702, at *6. Because it was reasonable strategy not to contact a witness who could not help the defense, defense counsel was not ineffective for waiving Officer Patterson as a witness.

Petitioner alleges that defense counsel should have interviewed several other proposed witnesses, including Deion Lee and Fredricka Donald, who would have testified that Petitioner did not have a hammer or screwdriver when he left their home on the night of the incident. According to Petitioner, other witnesses would have testified that he frequently works on cars and carries tools in his pockets, and a character witness would have testified that Petitioner does not break into and enter buildings. Petitioner asserts that these witnesses would have supported his defense.

Defense counsel, however, informed the trial court in the jury's absence that, although Petitioner did give him a list of people who could verify that he worked on cars, Petitioner did not tell him that those people were present with him on the night in question. The attorney did not place the individuals' names on his witness list because, whether Petitioner worked on cars was not relevant; the question was whether Petitioner used the tools in his possession as burglar tools on November 3, 2011. (11/8/12 Trial Tr. at 55-56.)

Furthermore, the Michigan Court of Appeals reasonably concluded that, even if all the proposed witnesses had testified consistently with Petitioner's assertions, Petitioner failed to show that the additional testimony would have been outcome determinative. *See Maxie*, 2014 WL 3612702, at *9. For example, if the witnesses had testified about Petitioner frequently carrying tools to repair cars, "there was still the issue of the origin or purpose of the other tools found with [Petitioner] around 3:30 a.m. outside of a building with damaged utility equipment and a window that had been opened by apparently moving an aluminum rod." *Maxie*, 2014 WL 3612702, at *5. As for the character

witness, it was sound trial strategy not to produce him, because any cross-examination by the prosecutor regarding Petitioner's character could have been harmful to the defense, given Petitioner's past convictions and admitted drug use. The Court concludes that trial counsel was not ineffective for allegedly failing to contact and call Petitioner's proposed witnesses.

### 4. Failure to Object

#### a. The 911 Recording

Petitioner asserts that defense counsel should have objected to the admission of Grandmaison's call to the 911 operator because the recording was not provided to defense counsel before trial. Defense counsel, however, used the tape to support Petitioner's defense by arguing to the jury that Grandmaison sounded a little disoriented on the 911 tape and that the disorientation could have been due to his using crack cocaine with Petitioner. (11/8/12 Trial Tr. at 26.) This was reasonable trial strategy and not ineffective assistance.

#### b. Failure to Object to the Prosecutor's Closing Argument

Petitioner contends that the prosecutor made numerous prejudicial statements during closing arguments and that defense counsel should have objected to the remarks. The trial court, however, instructed the jurors that the attorneys' closing arguments were not evidence and that the jurors should base their decision only on the admissible evidence. (11/6/12 Trial Tr. at 78-79; 11/8/12 Trial Tr. at 35-37.) These instructions arguably cured any irregularities in the prosecutor's arguments, because "juries are presumed to follow their instructions." *Richardson v. Marsh*, 481 U.S. 200, 211 (1987);

*see also Byrd v. Collins*, 209 F.3d 486, 537 (6th Cir. 2000) (stating that, when a court instructs a jury that the attorneys' arguments are not evidence, such instructions sometimes cure improprieties in closing arguments) (citing *United States v. Carroll*, 26 F.3d 1380, 1389 n. 12 (6th Cir. 1994)).

Furthermore, the prosecutor's comments were based on the evidence, were reasonable inferences from the evidence, or were a response to the defense theory. As such, they were not improper. Prosecutors may "argue the record, highlight any inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008).

The Michigan Court of Appeals reasonably concluded that, because the prosecutor did not engage in any misconduct, defense counsel could not be faulted for failing to object. *Maxie*, 2014 WL 3612702, at *15. Petitioner, therefore, is not entitled to relief on the basis of defense counsel's failure to object to the prosecutor's remarks.

### 5. Failure to Impeach

Petitioner contends that defense counsel should have impeached Grandmaison and Sergeant Matthew Ward with prior inconsistent statements that they made at Petitioner's preliminary examination. At the preliminary examination, Grandmaison stated that, after he heard the aluminum bar hit the ground, he looked through the office window and did not see anything. (11/15/11 Preliminary Examination Tr. at 6.) At trial, he claimed that he saw the silhouette of a person in the fence company's office. (11/7/12 Trial Tr. at 15.) This was not substantially inconsistent with his testimony at the preliminary examination

where he testified that, although he did not see the intruder's face, he saw a shadow. (11/15/11 Preliminary Examination Tr. at 6-8.)

Furthermore, "[c]ourts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Millender v. Adams,* 187 F. Supp. 2d 852, 870 (E.D. Mich. 2002). "[T]actical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." Id. at 872 (citing *Johnson v. Hofbauer,* 159 F. Supp.2d 582, 607 (E.D. Mich. 2001)).

Other facts in dispute are whether Grandmaison called the 911 operator before or after he saw a person in the building and whether he saw Petitioner with a flashlight. But the alleged inconsistencies in testimony on these issues were minor, given the fact that Petitioner admitted to being in the building and interacting with Grandmaison while he was there. Therefore, defense counsel's failure to cross-examine Grandmaison about the alleged inconsistencies between Grandmaison's testimony at the preliminary examination and at trial did not prejudice Petitioner. Defense counsel did cross examine and re-cross examine Grandmaison, and when, as here, a defense attorney conducts a meaningful cross-examination of a witness, the attorney's "failure to employ a trial strategy that, in hindsight, might have been more effective, does not constitute unreasonable performance for the purposes of *Strickland.*" *Cardwell v. Netherland,* 971 F. Supp. 997, 1019 (E.D. Va. 1997). Petitioner's claim about trial counsel's alleged failure to impeach Grandmaison lacks merit.

As for Sergeant Ward, his allegedly prior inconsistent statement was that the

window which Petitioner supposedly entered appeared to be open and not damaged. (11/15/11 Preliminary Examination Tr. at 20.) At trial, he stated, "I believe [the window] was removed, and part of it was laying in the shrubs. I can't remember exactly, but it was open." (11/7/12 Trial Tr. at 59-60.) Because he was not certain about the condition of the window when he testified at trial, defense counsel's failure to question Sergeant Ward about his prior testimony did not amount to deficient performance. The jury, moreover, had an opportunity to view a picture of the window and to make its own determination as to whether the window was missing or broken. Therefore, defense counsel's allegedly deficient performance did not prejudice the defense.

For all the reasons given above in the discussion on defense counsel, counsel's performance was not deficient, and the deficient performance did not prejudice the defense. The state court's rejection of Petitioner's claims regarding trial counsel was not contrary to, or an unreasonable application of, *Strickland*, and Petitioner is not entitled to relief on his second claim.

## C. The Prosecutor

In his third claim, Petitioner alleges that the prosecutor deprived him of due process and a fair trial by eliciting irrelevant and highly prejudicial information, arguing facts not in evidence, expressing a personal belief in certain facts, and shifting the burden of proof to Petitioner. The State argues that these assertions are procedurally defaulted because Petitioner failed to preserve the claims for state appellate review. Petitioner replies that a failure to review his prosecutorial-misconduct claims would result in a

fundamental miscarriage of justice because he is actually innocent of the crimes for which he was convicted.

### 1. The Doctrine of Procedural Default

A procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997 ). Under the doctrine of procedural default, "a federal court will not review the merits of [a state prisoner's] claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). In this Circuit,

> "[a] habeas petitioner's claim will be deemed procedurally defaulted if each of the following four factors is met: (1) the petitioner failed to comply with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner has not shown cause and prejudice excusing the default." [*Jalowiec v. Bradshaw*, 657 F.3d 293, 302 (6th Cir. 2011)]. To determine whether a state procedural rule was applied to bar a habeas claim, [courts] look "to the last reasoned state court decision disposing of the claim." *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc).

*Henderson v. Palmer*, 730 F.3d 554, 560 (6th Cir. 2013).

### 2. Application

The state procedural rule in question here is Michigan's contemporaneous-objection rule. The rule requires defendants in criminal cases to preserve their appellate claims by objecting on the same ground in the trial court. *People v. Buie*, 298 Mich. App. 50, 70-71; 825 N.W.2d 361, 374 (2012).

The first procedural-default factor is satisfied because Petitioner admits that he did not object at trial to most of the prosecutor's alleged errors. *See* Petitioner's Amended

Memorandum of Law, p. 61, ECF No. 10, Page ID 229.  The second factor is satisfied

because the Michigan Court of Appeals enforced the contemporaneous-objection rule

when it stated that Petitioner did not preserve his claim about the prosecutor's closing

remarks by objecting at trial.  *See Maxie*, 2014 WL 3612702, at *6.  As for Petitioner's

claims that the prosecutor suppressed favorable testimony and failed to correct perjured

testimony, the Court of Appeals reviewed the claims for "plain error" affecting

Petitioner's substantial rights because the issues were unpreserved.  *Id*. at *12.

Although the Michigan Court of Appeals also addressed Petitioner's prosecutorial-

misconduct claims on the merits, this alternative holding "does not require [the Court] to

disregard the state court's finding of procedural bar."  *Coe v. Bell*, 161 F.3d 320, 330 (6th

Cir. 1998).  As explained in *Harris v. Reed*, 489 U.S. 255 (1989),

> a state court need not fear reaching the merits of a federal claim in an
> *alternative* holding.  By its very definition, the adequate and independent
> state ground doctrine requires the federal court to honor a state holding that
> is a sufficient basis for the state court's judgment, even when the state court
> also relies on federal law.  See *Fox Film Corp. v. Muller*, 296 U.S. 207,
> 210, 56 S.Ct. 183, 184, 80 L. Ed. 158 (1935). Thus, by applying this
> doctrine to habeas cases, [*Wainwright v. Sykes*, 433 U.S. 72 (1977)] curtails
> reconsideration of the federal issue on federal habeas as long as the state
> court explicitly invokes a state procedural bar rule as a separate basis for
> decision.  In this way, a state court may reach a federal question without
> sacrificing its interests in finality, federalism, and comity.

*Id*. at 264 n.10 (emphasis in original).  The second procedural-default factor is satisfied.

The third factor is satisfied if the state procedural rule in question was an adequate

and independent state ground for denying review of a federal constitutional claim.  "The

adequacy of a state procedural bar turns on whether it is firmly established and regularly

followed; a state rule is independent if the state court actually relies on it to preclude a

merits review." *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005) (citing *Abela v. Martin*, 380 F.3d 915, 921 (6th Cir. 2004)).

"Michigan's contemporaneous-objection rule is both a well-established and normally enforced procedural rule," *Taylor v. McKee*, 649 F.3d 446, 451 (6th Cir. 2011), and the Michigan Court of Appeals relied on the rule to preclude full review of Petitioner's prosecutorial-misconduct claims. Therefore, the third procedural-default factor is satisfied.

The fourth factor requires a petitioner to show "cause" for his state procedural error and resulting prejudice. In the absence of "cause and prejudice," a habeas petitioner may pursue a procedurally defaulted claim only if he can demonstrate that failure to consider his claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Petitioner alleges in a reply to the State's initial answer to his habeas petition that a fundamental miscarriage of justice would occur if the Court failed to review his claim because he is actually innocent of first-degree home invasion and possession of burglary tools. *See* Petitioner's Reply to Respondent's Answer, p. 14, ECF No. 17, Page ID 921. It is true that "[a] fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.' " *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). Nevertheless, "prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.' " *House v. Bell*, 547 U.S. 518, 536-37 (2006)

(quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324.

Petitioner has not presented the Court with any new and credible evidence of actual innocence, and the evidence against him was substantial. Therefore, a miscarriage of justice will not occur as a result of the Court's failure to address the substantive merits of Petitioner's prosecutorial-misconduct claims.

Although Petitioner alleges in his second claim that trial counsel was ineffective for failing to object to the prosecutor's closing argument, the Michigan Court of Appeals determined that the prosecutor did not engage in any misconduct and, therefore, defense counsel could not be faulted for failing to object. *Maxie*, 2014 WL 3612702, at *15. This Court agrees, because the prosecutor was entitled to "argue the record, highlight any inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." *Cristini*, 526 F.3d at 901.

Furthermore, the evidence against Petitioner was substantial, and the trial court instructed the jurors that the attorneys' arguments were not evidence. Petitioner's claims of perjury and suppression of evidence lack merit for the reasons given by the state court: there was no suppression of evidence favorable to the defense, and Sergeant Ward's testimony was not clearly perjury. *Maxie*, 2014 WL 3612702, at *12-*13. Therefore, defense counsel was not ineffective for failing to object to the prosecutor's remarks and

conduct, and Petitioner has not shown "cause" for his procedural defaults. His prosecutorial-misconduct claims are procedurally defaulted.

## D. Appellate Counsel

Petitioner alleges in a supplement to his amended memorandum of law that his appellate attorney on direct review was ineffective for failing to adequately investigate and raise Petitioner's claims about trial counsel. The Supreme Court, however, has stated that an indigent defendant has no constitutional right to compel appointed counsel to raise nonfrivolous claims if counsel, as a matter of professional judgment, decides not to present those claims. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). "In fact, the process of winnowing out weaker arguments on appeal is the hallmark of effective appellate advocacy." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (quotation marks and end citations omitted). To prevail on his claim about appellate counsel, Petitioner must demonstrate (1) that his appellate attorney acted unreasonably in failing to discover and raise nonfrivolous issues on appeal and (2) there is a reasonable probability Petitioner would have prevailed on appeal if his attorney had raised the issues. *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citing *Strickland*, 466 U.S. at 687-91, 694).

The state trial court rejected Petitioner's claim as frivolous, noting that "appellate counsel not only argued ineffective assistance by trial counsel, but argued it with great force, in *both* the Circuit Court and the Court of Appeals." *People v. Maxie*, No. 11-36678-FH-3, at 2-3 (Saginaw Cty. Cir. Ct. Oct. 29, 2015), ECF No. 22-20, PageID 1397-98 (emphasis in original). The trial court also noted that the appellate attorney "devoted more than 76 hours to attempting, with great skill, to obtain[] a new trial for Defendant,"

and the fact that he was unsuccessful did not mean he rendered substandard assistance of counsel. *Id*. at 3, Page ID 1398.

Petitioner raised his underlying claims about trial counsel on direct review, either through counsel, or in his *pro se* supplemental brief. To the extent that appellate counsel failed to adequately raise or investigate any of those claims, counsel did not act unreasonably, because the claims lack merit for the reasons given above in the discussion on trial counsel. It follows that the state trial court's ruling – that Petitioner's claim about appellate counsel was frivolous – was not contrary to, or an unreasonable application of, Supreme Court precedent. Petitioner, therefore, has no right to relief on the basis of his claim about appellate counsel.

## IV. Conclusion

The state-court decisions on Petitioner's first, second, and fourth claims were not contrary to Supreme Court precedent or unreasonable applications of Supreme Court precedent. The state-court decisions also did not amount to unreasonable determinations of the facts. Additionally, the state-court rulings were not so lacking in justification that there was an error beyond any possibility for fairminded disagreement, and Petitioner's third claim is procedurally defaulted. Accordingly, the Court denies the petition for writ of habeas corpus.

The Court also denies a certificate of appealability because reasonable jurists would not find the Court's assessment of Petitioner's first, second, and fourth claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As for Petitioner's procedurally-defaulted third claim, reasonable jurists would not "find it debatable

whether the petition states a valid claim of the denial of a constitutional right" or that the

Court's procedural ruling was incorrect. *Id*. Petitioner, nevertheless, may appeal this

Court's decision *in forma pauperis* because he was permitted to proceed *in forma*

*pauperis* in this Court, and an appeal could be taken in good faith. 28 U.S.C. §

1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

S/Victoria A. Roberts
VICTORIA A. ROBERTS

Dated: December 12, 2018                    UNITED STATES DISTRICT JUDGE